[Cited in U. S. v. Holly, Case No. 15,381.]

## Case No. 16,662.

### UNITED STATES v. WELLS.

[2 Cranch, C. C. 45.] [1]

Circuit Court, District of Columbia. June Term, 1812.

GAMING—MARYLAND STATUTES—GEORGETOWN BY-LAWS.

The by-law of Georgetown, prescribing a penalty for keeping a public gaming-table, does not supersede, nor repeal the Maryland act of 1797, c. 110, prescribing a penalty for keeping a faro-table in a house occupied by a tavern-keeper.

[Cited in U. S. v. Holly, Case No. 15,381.]
[Cited in Town of Van Buren v. Wells, 53 Ark. 368, 14 S. W. 40.]

Indictment under the act of assembly of Maryland of 1797, c. 110, for keeping a faro-table in a house occupied by a tavern-keeper.

There was a verdict for the defendant, at the last term, and a motion for a new trial, upon a question of law reserved, namely, whether the defendant was liable to the fine of £50 imposed by the act of assembly, he having been fined by a justice of the peace 20 dollars under the by-law of the corporation of Georgetown, of March 7, 1806, which enacts that any person who shall keep any public gaming-table or device for common gaming, within the corporation, shall "for every offense of gaming at such table or device for gaming, forfeit and pay the sum of twenty dollars." The offense for which he was thus fined was one of the acts of gaming at the faro-table for the keeping of which, in a house occupied by a tavern-keeper, the

present indictment was found. The charter of the corporation of Georgetown gave them power "to restrain or prohibit gambling;" and authority to pass all laws not inconsistent with the laws of the United States, which may be necessary to carry into effect all the powers vested in the corporation.

## Case No. 16,663.

### UNITED STATES v. WELLS.

[2 Wash. C. C. 161.] [1]

Circuit Court, D. Pennsylvania. April, 1808.

SET-OFF AGAINST UNITED STATES—UNLIQUIDATED DAMAGES.

1. When the claim which is asserted as a set-off, depends for its validity on the generosity of the government, it cannot be enforced by this court, against a legal demand upon the defendant by the United States.

[Cited in Smith v. Woodman, 28 N. H. 532.]

2. Damages which have not been ascertained, and are uncertain in their nature, cannot be made a matter of set-off.

This action was brought to recover a balance due from the defendant, as a collector of the excise duties. The defendant was an active officer, in resisting the opposers of the excise law, in the western counties of Pennsylvania, and in consequence of his activity, had his house burnt by the insurgents, and suffered other injuries to his property. By an act of congress, passed in 1795, [1 Stat. 423], upwards of eight thousand dollars was placed at the disposal of the president, to aid such of the officers of government, and citizens, who had suffered losses in their property, by the insurgents, as in his opinion stood in need of immediate assistance. The president appointed commissioners to view and value these losses, who reported that the defendant, amongst others, had suffered to the amount of —— dollars. The defendant received seven or eight hundred dollars, much less than the sum mentioned in the report. The subject of full compensation was afterwards brought before congress, and a favourable report made by the secretary of the treasury, to whom the subject was referred, which was rejected by the committee of claims. The defendant claims the difference between the estimated value of his losses, and the sum

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

received, to be considered by the court and jury, as so much paid by him to the United States, in part of what is now demanded of him; and of course to be credited to him in this action. The defendant informed against delinquents, under the excise law, and prosecutions were instituted against the defaulters by the government; but as connected with the general amnesty, granted to these people after the insurrection was quelled, the prosecutions were discontinued by order of the government. The informer being entitled to one half of the penalty on conviction, the defendant claims a credit for his half of all the penalties, in the cases where he was an informer; upon the ground that the government could not, by the act of its officers, deprive him of the rights which had once vested in him to these penalties. This was the second point in the cause.

Mr. Dallas, for plaintiff.

Morgan and Ingersoll, for defendant.

WASHINGTON, Circuit Justice. Neither of these claims, on the part of the defendant, can be supported. The first is made upon the generosity of the government, which might be very proper if presented to the legislative branch of the government, in its real character of an imperfect obligation. But the attempt to enforce it, in a court of justice, cannot possibly succeed. It could not be countenanced, even against an individual; let the defendant's counsel call it by what name they please, it is nothing more or less, than to offset a claim of damages sustained by a public officer, against the government. An appeal has been made to the liberality, and we think the justice, of the proper department, which did not succeed. It is impossible for us to assist the defendant.

The claim of the penalties is quite as unfounded. It is immaterial whether the United States, by discontinuing the prosecutions, could legally defeat the defendant of his half of the penalties, or not. If they could not, then the defendant was not injured by this act of the government. He might still have proceeded for his part; if he could, then, had the act been that of an individual, (the most favourable point in which to view the case for the defendant,) his claim would be for damages sustained; which might be more or less, according to circumstances; such as his ability to have supported the prosecutions, and that of the person prosecuted, to pay in cases of conviction. But the damages, being unliquidated, could not be offset.

The parties then agreed to withdraw a juror, and to refer the claims of the defendant to the officers of the treasury department.